And we'll move on to our next case, which is Samaron v. Omaha Life Insurance. Mr. Judge? Good morning, Your Honor. May it please the Court, Stephen Judge, on behalf of the appellant, Troyer Products. United screwed up. Paid a million dollars to the wrong beneficiary. The District Court decision stands. It's a matter of law. Troyer, not United, will have to bear the consequences of that injustice. I thought the transcript from the December 15th meeting of Troyer's Board of Directors showed amazing confusion. And it seemed, you know, when all the news one could figure out was going on, they decided the money should go to Buck. So Buck gets his million dollars. And I don't see any basis here for giving them another million. Well, it's not another million. Troyer hasn't received any money. Dave Buck got all the money, even though Troyer was entitled to it. I know. But if Troyer, if these guys, you know, Holson and Buck and Clark, if they decide, whatever the, you know, whatever the policy says, they want Buck to have the million dollars. If the money should have gone to Troyer, well, they would pass it on to Buck. So it doesn't matter whether it got directly a million dollars, got it indirectly. Isn't that the character of this directors' meeting? I don't think so, Your Honor. You can see that there's different ways to read that transcript or listen to the audio about what happened at that meeting. But I think the important factor from our perspective is that the confusion at that meeting was caused by United. Before that meeting ever happened, Dan Holtz, who is the majority owner, a board member and the president of the company, called United and asked, as he was required to do under the insurance contract, he called United and asked who the beneficiary was. Up until that moment... There's no question that United screwed up. The question is, what harm was done if they wanted the money to end up in Buck's pockets? And it doesn't matter, does it, whether Troyer should have given it to him, should have gotten the million and given it to him or go directly to him? Well, I think that's the essential issue of fact here, Your Honor, because I don't think the record below supports the idea that Dan Holtz wanted the money to go to Dave Buck. Dan Holtz thought, based on his conversation with United, that Buck was entitled to the money, and therefore he thought Buck should get Buck's money. There's no evidence that Dan Holtz ever thought that Buck should get... At this board meeting, Buck five times said that the company was the beneficiary. Normal people who sincerely want the money to come to the company, given that warning, would have searched the files. But, of course, we know that that didn't happen. I'm inclined to think that all of this did Troyer a favor, because had the money come to Troyer and then been dispersed to Buck, it would have been taxable income to Troyer. And would have been deductible only to the extent it was ordinary and necessary business expenses, which it wouldn't have been. So what actually happened had favorable tax consequences for Troyer, and Troyer is now complaining, which is a little odd. Under that interpretation of the record, if Troyer had intended the money to go to Buck, regardless of who the beneficiary was, that would be true. And perhaps that's a reasonable interpretation of the record, but I don't think it's the only interpretation of the record. I think another interpretation of the record is that Dan Holtz believed, up until a certain point, that Troyer Products was the beneficiary. He was told by United, and believed by United, not only that Buck was the beneficiary, but he specifically asked about whether or not United had in its files... Remember that United has the files that count. He specifically asked whether United had in its files an executed change of beneficiary form. No change of beneficiary form in United's files means no change of beneficiary. So Dan Holtz, based on that information, believed that Buck was the beneficiary. Had he known that there was a change of beneficiary form, the result would have been different, and that's our fundamental position. Buck told him that five times. You don't doubt that anymore, now that we've got the transcript. We have the transcript. Five times he said that. It apparently is agreed that the change of beneficiary form is in Holtz's personal files, because he received it when he bought the stock, and it's in Troyer's corporate files, although Holtz didn't find it. What more is needed? If I may point out a distinction here, what Holtz had in his files and what Troyer had in its files, both in 2005 and in 2011, was an unexecuted copy of the change of beneficiary form. Troyer and Holtz had not seen an executed copy. They didn't know it existed. That's why Holtz and Troyer asked United who the beneficiary was and asked whether an executed copy of the unexecuted form they had in their possession was in United's possession, and at that board meeting, according to Dan Holtz's testimony, what Buck had as evidence that Troyer was the beneficiary was the same... We have the transcript. I don't see the relevance of Holtz's testimony. It's perfectly clear. You have this statement by Clark that the check will come to Troyer, but it's going to be disbursed to David Buck. Is that correct? And they talk around that. And all Holtz says of any significance is we want to make sure that it's legal and doesn't affect the books. He's not raising any question about whether the money should go to Buck. And that's because he thinks it's Buck's money based on what United told him. No, because he's just echoing what Clark was saying, that the intention was that the check will come to Troyer, but it's going to be disbursed to Buck. And Holtz never questions that, provided it's legal and won't foul up their books. Earlier in that same meeting, Holtz does say that he doesn't have a dog in this fight. That he's not interested because he's already talked to United. He knows that, according to United's file, Buck is the beneficiary. So he thinks it's Buck's money. However the money is distributed, it's Buck's money because that's what's in the record. No, because what Clark said was the check is supposed to go to Troyer, and then it'll be endorsed to Buck. And Holtz seems perfectly happy with that. But that was not what Holtz thought would occur. That's what Clark thought. But he just heard it from Clark. But Clark didn't know that. Clark said that that was what was going to happen. It was going to be disbursed to Buck. It was going to come to Troyer, go to Buck. And Holtz is perfectly happy with that. He raises no question about it. He doesn't say, well, that's Troyer's money, I'm not going to give it to Buck. I disagree with that, Your Honor, and I think that's a question of fact. I don't see how you can disagree with what he said. I don't disagree with what he said, Your Honor. In the context of having one minute before heard what Clark said. To respond, Your Honor, Clark did not talk to United. So Clark at that meeting says what Clark thinks is going to happen. I don't care what Clark. I'll tell you about Buck or about Clark. Mr. Clark is dead. Mrs. Clark is at the meeting. But Mr. Clark is not present through a medium. That's good. When I say Clark, I'm referring to, and I believe Judge Posner was referring to, Mrs. Darlene Clark, who at the meeting. Buck did say what Clark's intention had been when Clark was alive. When the policy was originally arranged, the plan was that the money would end up with Buck so Buck could buy out Clark's stock interest. Your Honor, when Dan Holtz bought the company in 2005, on the books was what he believed was an insurance policy with a million dollar proceeds going to Troyer. The problem is that Dan Holtz didn't have the opportunity as the president of Troyer, the majority owner of Troyer, to take any issue with what was going to happen with this. Whatever the plan was in 2003, Dan Holtz wasn't involved. He wasn't involved in 2003 and wouldn't have known what the plan was or whether the plan had changed. There's no argument in the record, no evidence or reason why Troyer should be bound to that plan because that was Ron Clark's intention in 2003. That intention could have changed. The ownership of the company changed. The problem is Holtz didn't have the opportunity to make that change because he was confused about who the beneficiary was because he was told by United that Dave Buck was the beneficiary. Our position is that if you look at the record, if you look at what happened at that board meeting, there is at least a possibility, a way to read what happened there, that says that if United had said something different in December 2011 before that board meeting, if when Dan Holtz had called, United had said Troyer is the beneficiary, our position is that Dan Holtz and Troyer would have done everything in their power to get that money, but they did not because of United's misrepresentation. Thank you, Your Honor. That's why we believe this case should be reversed and remanded for further proceedings. Thank you, Mr. Judge. Mr. Jones? May it please the Court, Brian Jones for United of Omaha. The district court got this one right based on both the facts and the law. Fundamentally, what happened here is exactly what Troyer decided should happen here. It's not a case where the insurer refused to pay because it did pay within a couple of weeks. The recording of that board meeting, that December 15, 2011 board meeting, is the entire story, and you can see exactly what the company's knowledge was and what its decision was. Why not say I had some difficulty finding a waiver? A waiver depends, I would have thought, on a formal resolution adopted by the board. There wasn't any formal resolution. There was this discussion. Apparently, everybody was in agreement that Buck would get the money eventually, but there was no resolution. The district court says, well, in Indiana, you don't actually need a resolution, and then for that it cites nothing. Do you know of any pertinent Indiana cases for the proposition that boards can waive corporate entitlements without formal resolutions? We have located none, Your Honor. We know Troyer's bylaws do not place any such requirement on that. Indiana statute does not. Well, there may be nothing to go on because, of course, Troyer hasn't pressed this argument, but it does seem a little odd to me to think about corporate waivers by boards with no resolutions. Corporate law really stands on formalities in many ways. It does, but this board actually affirmatively decided we don't need to take a vote. No, the way boards decide things is by somebody makes a motion and a vote is taken. Boards don't decide things by nobody proposing motions and nobody voting. Well, I think it depends on what each company's particular bylaws are because they can vary. Okay. Are there any bylaws of Troyer Corporation that says our board can decide without formal resolutions? The bylaws do not speak to whether they're required. No, they don't. So as a matter of corporate law, it seems to me, the district court's opinion is highly questionable. But as I say, Troyer hasn't raised this issue on appeal. Well, when we look at what the elements of waiver are, the well-established no legal right and the intention to relinquish that right, and Indiana has not specified that the intention to relinquish that right by a corporation must take a particular form. Corporations don't have intentions. People have intentions. Corporations have acts. They act through their agents. They act through the board. Right. And, well, you know, I don't want to repeat myself because this doesn't matter to this appeal, but it looks to me like Troyer had a very good ground for appeal, which it didn't bother to raise. And it certainly did not raise that, Your Honor. What we do know, what Troyer did know at that meeting, and what it did not discuss, as earlier questions pointed out, Holtz said nothing about any information he got from United during this meeting. You would think that would be the type of thing. How large a company is Troyer? It's around, I think, 20 employees at the time, Your Honor. So it's a small company. It's a small company. So probably formalities of corporate law are not in their radar screen. I think that's fair to say, Your Honor, yes. And I think it would be accurate to say that the secretary of the board was not a lawyer. Correct, Your Honor, yes. There were non-lawyers constitute of the board, and there may be pluses and minuses to that. When counsel suggests that Troyer did not know that an executed form had been sent in, that's not correct because Dave Buck signed it and sent it in back in 2003, so he knew that. And Dave Buck had 100% complete, accurate information, not only about what the beneficiary of the policy was, but also why the policy was put in place in the first place, who the original beneficiary was, and why it was changed to Troyer upon issuance. And they knew they had a legal right to collect the proceeds, and they decided they would make that money go to Buck, which it did. That satisfies the elements of waiver under it. Its online webpage says, by the way, that it has 25 full-time employees and generates an estimated $3.4 million in annual revenue. Do we know whether it has a general counsel someplace hiding in the woods? My understanding, Your Honor, is that it does not. It does not have a general counsel. And I think that speaks to your point when you mentioned the revenue numbers, that this $3.4 million annual revenue, I think the testimony in the record showed around 2011, it was around $5 million. Well, an additional million, that's a pretty big hit, and that's why all the directors were adamant that this money is to not hit the company's books. And so they had the knowledge they intended to relinquish that right under Indiana law. The district court also made the right call on the bad faith claim. Troyer argues that it ought to have some type of special status as the owner of the policy. And Indiana has decided for very nearly 10 years now that beneficiaries of policies do not get to sue insurers in tort. They can sue on the contract, but they don't get to sue under the tort of bad faith. So the district court properly ruled and determined that issue as well. One of the factual issues that Troyer, and you heard here today, conflates Dan Holtz with Troyer, as if Dan Holtz is equal to Troyer. Well, as a member of the board of directors, Dan Holtz is just one of the three directors who made that decision at that time. He enjoys no special status as the majority shareholder when he's on the board of directors, nor as the president of the company. And as the president of the company, the one who initiated this litigation, he is, of course, bound by the decision of the board of directors, which was that Dave Buck was to get the money in the first place. When he initiated this litigation under his implied, presumed authority he had as president, they, of course, took a opposite position. And it's worth noting that at no point at any time in this case has any of Troyer's active complaints bothered to even mention the board meeting. Even mention what, I'm sorry? The board meeting and the decision at the board meeting. So this is simply a contract case, which is why the defensive waiver was relevant to whether or not the contractual provision can be enforced by the insured. It was waived, and we argue that the district court's decision should be affirmed on that basis. Okay. Thank you. Thank you. Thank you, Mr. Chairman. So did you have something further you wanted to say? Just one thing, if I may. Yeah, go ahead. To respond to Judge Easterbrook's complaint that we didn't raise the issue of whether or not the board took a vote or whether or not the board was able to waive this, we did very clearly argue both below and here that what the board did, this conversation that they had, was inaction and silence and therefore insufficient under Indiana law to constitute a waiver. No, sir. I agree. I looked very carefully for it. You mentioned this fact at pages 27 and 28. Yes, sir. There's no argument based on that. Your argument about the lack of a waiver is that Troyer couldn't waive because it didn't know the truth. And that's poppycock. You don't make a corporate law argument. That's just what's in your brief, counsel. Thank you, Your Honor. Respectfully, I think it's there on 27 and 28 as we challenged both aspects of the waiver standard. If it's there, it's extremely well done. Thank you, Your Honor. Okay. Well, thank you very much to both counsel.